Filed 4/18/14  P. v. Paz CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073830 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F03202) |
| v. | |
| RAMON PAZ, | |
| Defendant and Appellant. | |

Defendant Ramon Paz was convicted of evading a pursuing peace officer with a willful or wanton disregard for the safety of persons and property (count one) and unlawfully taking and driving a vehicle (count two).  Defendant's sole contention on appeal is that the trial court erred in failing to stay his sentence on count two pursuant to section 654 of the Penal Code.[1]  We agree and will modify the judgment.

---

[1] Undesignated statutory references are to the Penal Code.

1

# FACTUAL AND PROCEDURAL BACKGROUND

On April 8, 2012, at 12:34 a.m., Officer David Eagleton heard gunshots while on patrol and, approximately two minutes later, was dispatched to Playerz Bar and Grill, a couple of miles away, in response to a call of gunshots being fired.

Miguel Banuelos was in his car in the Playerz Bar and Grill parking lot getting ready to leave when the shooting started. He ran into the building, leaving his keys in the ignition. When he went back outside, he saw defendant lying on the ground asking for help. Banuelos put defendant in the back seat of the car, and, when shooting began again, ran back to the building, leaving defendant in the car with the keys in the ignition.

Officer Eagleton and his partner were the first officers to arrive at Playerz Bar and Grill at approximately 12:38 a.m. Eagleton drove the marked police car, lights flashing and siren sounding, into the parking lot. Eagleton saw a car trying to leave and blocked the exit with his car. Eagleton got out of the patrol car for a "split second." Defendant—now in the driver's seat—looked at him, maneuvered Banuelos's car around the rear of the patrol car, and fled.

Officer Eagleton got back in his patrol car, leaving his partner behind, and took off after defendant. Defendant led Eagleton on a high-speed chase for about six minutes before pulling into a parking lot and surrendering. Upon his surrender, officers discovered that defendant had been shot. Officers also learned defendant had taken the car without Banuelos's permission.[2]

---

[2] Banuelos initially volunteered to officers that defendant had taken the car without his permission, but later recanted and testified at trial that he told defendant to take the car. The jury implicitly discredited Banuelos's trial testimony on this issue by finding defendant guilty of taking and driving Banuelos's car. (CALCRIM No. 1820 [to be found guilty of this crime, defendant must have taken or driven someone else's car "without the owner's consent"].)

Defendant was charged by complaint (later deemed an information by the court) with evading an officer (Veh. Code, § 2800.2, subd. (a)) and unlawfully taking and driving a vehicle (*id.*, § 10851, subd. (a)). A jury convicted defendant on both counts, and the trial court sentenced defendant to the upper term of three years for count one, and a consecutive eight months for count two. Defendant received 80 days of presentence credits and was ordered to pay fines and fees as enumerated in the abstract of judgment.

## DISCUSSION

Defendant contends the trial court erred in failing to stay execution of his sentence on count two pursuant to section 654 because taking and driving the car and evading the police constituted an indivisible course of conduct with a "single objective." We agree.

### A. The Law

Section 654, subdivision (a) provides, in pertinent part, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Thus, the statute bars multiple punishments for a single act that violates more than one criminal statute, and for multiple acts where those acts comprise an indivisible course of conduct incidental to a single criminal objective and intent. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208; *Neal v. State of California* (1960) 55 Cal.2d 11, 19 (*Neal*).) A potentially significant factor in deciding whether section 654 applies is the " 'temporal proximity' " of the crimes. (*People v. Evers* (1992) 10 Cal.App.4th 588, 603, fn. 10.)

When multiple offenses are committed during a course of criminal conduct deemed "indivisible," the offenses are treated as only one punishable act. (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).) " 'Whether a course of criminal conduct is divisible . . . depends on the intent and objective of the actor.' " (*People v. Beamon* (1973) 8 Cal.3d 625, 637, italics omitted.) "[I]f all of the offenses were merely

3

incidental to, or were the means of accomplishing or facilitating one objective, [the] defendant may be found to have harbored a single intent and therefore may be punished only once." (*Harrison*, *supra*, 48 Cal.3d at p. 335.) If, however, the defendant "entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*Beamon*, *supra*, 8 Cal.3d at p. 639; accord, *People v. Lewis* (2008) 43 Cal.4th 415, 519, disapproved on a different ground in *People v. Black* (Mar. 27, 2014, S206928) ___ Cal.4th ___ [2014 Cal. Lexis 2103 at p. *14]; *People v. Britt* (2004) 32 Cal.4th 944, 952.)

Whether the defendant harbored separate objectives during a course of criminal conduct is primarily a question of fact for the trial court. (*Harrison*, *supra*, 48 Cal.3d at p. 335; *People v. Coleman* (1989) 48 Cal.3d 112, 162; *People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583.) We review a challenge under section 654 for substantial evidence to support the trial court's determination. (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1336-1337.) "We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) However, " '[a] decision supported by a mere scintilla of evidence need not be affirmed on appeal.' [Citation.] Although substantial evidence may consist of inferences, those inferences must be products of logic and reason and must be based on the evidence. Inferences that are the result of mere speculation or conjecture cannot support a finding. The ultimate test is whether a reasonable trier of fact would make the challenged ruling considering the whole record." (*In re James R.* (2009) 176 Cal.App.4th 129, 135.)

### B. Analysis

In closing arguments the prosecution and defendant offered two alternative theories as to why defendant stole the car and evaded the officers. The prosecution argued that defendant, minutes after the shooting, hearing the patrol car sirens approaching, took advantage of a car with keys in it, and fled to avoid talking to officers. This would actually support a finding of a single course of conduct motivated by a single objective. Defense counsel essentially argued necessity, i.e., that defendant legitimately took the car and fled to get help because he had been shot. This is another single objective potentially motivating a single course of conduct. At sentencing, the trial court seemingly combined these two alternative and mutually exclusive theories, and, without further elaboration, held, "these were two distinct acts so as not to implicate [section] 654."

The arguments on appeal provide us no assistance. Defendant's argument that "once [he] drove away in the Honda Civic, the officers attempted to stop him, he refused, and the evading occurred while he committed the vehicle theft" actually supports the trial court's conclusion that there were two separate acts but is not supported by the evidence. And the Attorney General's reliance on *People v. Kwok* (1998) 63 Cal.App.4th 1236 to argue the momentary interlude between defendant's maneuvering around the patrol car and the officer initiating pursuit afforded defendant "a reasonable opportunity to reflect" and that the evasion posed "a new risk of harm" is unavailing. *Kwok* involves a burglary of a woman's apartment and then another burglary of the apartment and assault of the woman separated by nine days. (*Id*. at pp. 1256-1257.) Therefore, *Kwok* is factually distinct and inapposite.

We find little guidance in the arguments of counsel both at trial and on appeal, and nothing in the record elucidates the trial court's finding. Therefore, we analyze the evidence that was presented at trial. The evidence demonstrates that defendant was present at the scene of a shooting, was legitimately in Banuelos's car, heard sirens

approaching, and fled the scene to avoid the police just as the police arrived. There is no evidence that defendant made any effort to unlawfully take the car before he heard the police approaching; indeed, he was just pulling out of the parking lot as the police pulled in. Thus, the only reasonable inference is that his continued evasion of the police thereafter was motivated by the same intent and objective—to get away from the scene of the shooting. While we can envision circumstances when unlawful taking and driving the car and evading the police committed concurrently might nonetheless be based on separate intents and objectives, there is not substantial evidence to support such an implied finding here: The unlawful taking and driving was committed by defendant solely to accomplish the evasion of the police.

This analysis finds support in the numerous cases holding that section 654 applies where crimes are committed simultaneously or in close temporal proximity and both crimes bear the same principal objective. (*In re Adams* (1975) 14 Cal.3d 629, 635 [§ 654 bars punishment for transportation of various types of drugs when all drugs were transported in a single act of illegal transportation with all drugs to be delivered to a single person]; *People v. Bauer* (1969) 1 Cal.3d 368, 376-377 [§ 654 bars punishment for car theft as incidental to the defendant's objective to rob women whose car he stole from their house after completing the robbery]; *Neal*, *supra*, 55 Cal.2d at pp. 19-20 [§ 654 bars punishment for arson that was deemed incidental to the defendant's principal objective of killing victims whose bedroom the defendant lit on fire]; *People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1291 [§ 654 bars punishment for vandalism committed in act of committing arson with single intent to burn down the house].)

Accordingly, section 654 applies and we direct the trial court to stay the execution of defendant's sentence on count two.

## DISPOSITION

Execution of defendant's eight-month sentence on count two is ordered stayed pursuant to section 654. The judgment is affirmed as modified. The trial court is directed to prepare an amended abstract of judgment in conformity with this opinion, and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

                    BUTZ          , J.


We concur:


    NICHOLSON    , Acting P. J.


    HULL        , J.